1
2
3
4
5
6
7

**THE LAW OFFICE OF PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (SBN 287057)
*paul@pauljosephlaw.com*
4125 W. Pt. Loma Blvd., No. 206
San Diego, CA 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

***Counsel for Plaintiff and the Proposed Class***

8
9
10

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| ANDREA NATHAN, on behalf of herself, all others similarly situated and the general public,<br><br>              Plaintiff,<br><br>     v.<br><br>VITAMIN SHOPPE, INC.,<br><br>           Defendant. | Case No: **'17 CV 0948 BEN KSC**<br><br><u>CLASS ACTION</u><br><br>**COMPLAINT FOR VIOLATIONS OF:**<br>CAL. BUS. & PROF. CODE §§17200 *et seq*.; CAL. BUS. & PROF. CODE §§17500 *et seq*.; CAL. CIV. CODE §§ 1750 *et seq*.; BREACH OF EXPRESS WARRANTIES; and BREACH OF IMPLIED WARRANTIES<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Andrea Nathan, on behalf of herself, all others similarly situated, and the general public, by and through her undersigned counsel, hereby sues Vitamin Shoppe Inc., ("Defendant"), and alleges the following upon her own knowledge, or where she lacks personal knowledge, upon information and belief and the investigation of her counsel.

## INTRODUCTION

1.  Defendant markets Vitamin Shoppe brand "Garcinia Cambogia Extract," (the "Product"), a dietary supplement that Defendant falsely claims is an effective aid in "weight management" and "appetite control" despite that the Product's only purportedly active ingredients, Hydroxycitric Acid ("HCA") and chromium are scientifically proven to be incapable of providing such weight-loss benefits.

2.  Plaintiff read and relied upon Defendant's claims when purchasing the Product and was damaged as a result.

3.  Plaintiff brings this action challenging Defendant's misleading weight-loss claims relating to the Product on behalf of herself and all others similarly situated consumers in California, alleging violations of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*. ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. ("UCL"), and False Advertising Law, *id*. §§ 17500 *et seq*. ("FAL"). Plaintiff further alleges that Defendant breached express and implied warranties under state law.

4.  Plaintiff seeks an order compelling Defendant to (a) cease marketing the Product using the misleading and unlawful tactics complained of herein, (b) destroy all misleading, deceptive, and unlawful materials, (c) conduct a corrective advertising campaign, (d) restore the amounts by which it has been unjustly enriched, and (e) pay restitution damages and punitive damages, as allowed by law.

## JURISDICTION & VENUE

5.  This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value

of $5,000,000, exclusive of interest and costs, and because more than two-thirds of the members of the Class reside in states other than the state of which any defendant is a citizen.

6.     The Court has personal jurisdiction over Defendant because it has purposely availed itself of the benefits and privileges of conducting business activities within California, and consented to personal jurisdiction by registering to do business in California.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff resides in and suffered injuries as a result of Defendant's acts in this District, many of the acts and transactions giving rise to this action occurred in this District, and Defendant (1) has intentionally availed itself of the laws and markets of this District through the promotion, marketing, distribution, and sale of the Product in this District, and (2) is subject to personal jurisdiction in this District.

## PARTIES

8.     Plaintiff Andrea Nathan is a resident of San Diego, California.

9.     Defendant Vitamin Shoppe Inc., is a Delaware corporation with its principal place of business in New Jersey. Defendant is registered to do business in California as entity number C3656948.

## FACTS

### I.     Scientific Research Demonstrates that Garcinia Cambogia Extract (HCA) Is Not Effective in Supporting Weight Loss, Weight Management or Appetite Control

10.     Numerous randomized, placebo controlled scientific studies demonstrate that Garcinia Cambogia extract and/or HCA does not provide weight-loss or appetite control benefits in humans. In fact, the only reliable scientific evidence demonstrates it is no more effective as a weight-management aid than a placebo.

*Nathan v. Vitamin Shoppe Inc.*
CLASS ACTION COMPLAINT

11.    In 1998, Dr. Steven Heymsfield and his colleagues published the first study to "examine the effectiveness of hydroxycitric acid for weight loss and fat mass reduction in a rigorous controlled trial."[1]

12.    Dr. Heymsfield and his team of researchers specifically noted that, at that time, the "evidence of human hydroxycitric acid efficacy for weight control is based largely on studies with small sample sizes, studies that failed to include a placebo-treated group, and use of inaccurate measures of body lipid change." Therefore, their "investigation was designed to overcome limitations of earlier studies and examine the effectiveness of hydroxycitric acid for weight loss and fat mass reduction in a rigorous controlled trial." [2]

13.    The study was "carried out using accepted clinical trial design procedures and applying accurate body composition [measurement] methods," and was designed "to evaluate the efficacy of G. cambogia for body weight and fat mass loss in overweight human subjects."[3]

14.    The "study, carried out during a 12-week evaluation period and using accepted experimental design and in vivo analytic methods, failed to support the hypothesis that hydroxycitric acid as prescribed promotes either additional weight or fat mass loss beyond that observed with placebo."[4]

15.    "Specifically, body weight and fat mass change during the 12-week study period did not differ significantly between placebo and treatment groups."

16.    "Additionally, there were no observed selective fat-mobilizing effects specifically attributable to the active agent, hydroxycitric acid."

---

[1] S. Heymsfield et al., *Garcinia Cambogia (Hydroxycitric Acid) as a potential antiobestiy agent*, 280 J. Am. Med. Assoc. 1596, 1596 (1998).
[2] *Id.*
[3] *Id.*
[4] *Id.* at 1599.

17.    The researchers specifically noted that the difference in weight loss between the subjects that received the HCA supplementation and those that received the placebo was "not statistically significant."[5]

18.    Further, "[b]ody weight change differences remained nonsignificant after controlling for patient starting weight, sex, and age,"[6] and "[i]n no case did any secondary analysis indicate any statistically significant effect for the active compound to produce more weight loss than placebo."[7]

19.    In addition, the study found that Garcinia Cambogia had no effect on fat loss.[8] Rather, "the percentage of fat mass differences also was nonsignificant," and "in no case did analysis indicate any statistically significant effect for the active compound to produce a different percentage of body fat mass loss than the placebo."[9]

20.    In sum, this rigorous study, which "was designed to overcome limitations of earlier studies," "failed to support a specific weight loss effect of G Cambogia."[10]

21.    The next year, the International Journal of Obesity published a "double blind, placebo controlled, randomized, crossover study" that likewise concluded that HCA supplementation was not an effective weight loss agent in people consuming a typical mixed diet.[11]

22.    The authors of the study noted that "[t]here are reports to support the role of (-)-HCA in promoting weight loss during a de novo lipogenic state in rodent studies, however, most people taking these weight loss supplements are not consuming diets that produce

---

[5] *Id.* at 1598.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.* at 1599.

[11] AD Kriketos et al., *-hydroxycitric acid does not affect energy expenditure and substrate oxidation in adult males in a post-absorptive state*, 23 Int. J. Obesity 867 (1999).

substrate de novo lipogenesis."[12] Therefore, they designed their study to examine "the effect of (--)-HCA on the regulation of metabolism in humans consuming a typical Western diet (approx. 30 ± 35% total calories as fat)."[13]

23.    Once again, after conducting a rigorous trial, the "results d[id] not support (--)-HCA supplementation as an effective weight loss agent in people consuming a typical mixed diet."[14]

24.    The study found no effect on weight loss or fat metabolism.

25.    In fact, "[b]ody weight did not change over the course of the study."[15]

26.    Further, HCA supplementation had no effect "on circulating concentrations of blood substrates associated with fat oxidation and regulation of glucose metabolism."[16]

27.    Therefore, the authors concluded that "the inability to demonstrate metabolic changes consistent with citrate lyase inhibition suggests that this mechanism is not operable to promote weight reduction . . . ."[17]

28.    In 2000, the American Journal of Clinical Nutrition published a study that found that "HCA, even when provided in large quantities, does not increase total fat oxidation in vivo."[18]

29.    The "study showed that large doses of G. Cambogia extract [(18 ± 0.4 g HCA)] do get absorbed in the intestine and can lead to a substantial increase in plasma HCA concentrations. However, this does not affect fat and carbohydrate oxidation rates."[19]

---

[12] *Id.* at 868.
[13] *Id.*
[14] *Id.*
[15] *Id.* at 870.
[16] *Id.* at 872.
[17] *Id.* at 873.
[18] Van Loon L et al., *Effects of acute (-)-hydroxycitrate supplementation on substrate metabolism at rest and during exercise in humans,* 72 Am. J. Clin. Nutr. 1445, 1445 (2000).
[19] *Id.* at 1449.

*Nathan v. Vitamin Shoppe Inc.*
CLASS ACTION COMPLAINT

30.   "Accordingly, a direct effect of HCA on fat oxidation seems unlikely to contribute to its claimed antiobesity or ergogenic potential."[20]

31.   Thus, the authors "conclude[d] that plasma HCA availability does not increase energy expenditure or stimulate skeletal muscle fat oxidation."[21]

32.   In 2001, a study publish in the International Journal of Obesity that tested the effect of HCA, found that "Two-week supplementation with HCA . . . did not result in increased satiety, fat oxidation, 24 h EE [energy expenditure] or BW [body weight] loss."[22]

33.   The study employed a "double-blind, placebo-controlled, randomized, cross-over design" and specifically examined the effects of HCA *alone* and HCA in combination medium-chain triglycerides on "satiety, fat oxidation, energy expenditure and body weight."[23]

34.   Like other controlled human trials, the study found that HCA "did not result in increased satiety, fat oxidation, 24 h EE [energy expenditure] or BW [body weight] loss."[24]

35.   The authors specifically noted that "BW [body weight] reduction was not different between treatments," and that "no difference in body fat loss was found between treatments."[25]

36.   In addition, "[t]he results did not support the hypothesis that HCA supplementation may be effective on appetite and weight control by increasing fat oxidation."[26]

---

[20] *Id.*

[21] *Id.* at 1448.

[22] E. Kovacs et al., *The effects of 2-week ingestion of (--)-hydroxycitrate and (--)-hydroxycitrate combined with medium-chain triglycerides on satiety, fat oxidation, energy expenditure and body weight*, 25 Int. J. Obes. 1087, 1087 (2001).

[23] *Id.* at 1088.

[24] *Id.* at 1087.

[25] *Id.* at 1091.

[26] *Id.* at 1087.

37.    To the contrary, "no effect of HCA on fat oxidation or 24 h energy expenditure was found."[27]

38.    Further, "There was no difference in SMR [sleeping metabolic rate], RMR [resting metabolic rate], DIT [diet-induced thermogenesis] and AEE [activity-induced energy expenditure] between treatments."[28]

39.    Put simply, "HCA was not effective."[29]

40.    The results of more recent studies have been the same: "Garcinia cambogia extract did not show dietary efficacy."[30]

41.    A 2008 study published in the Journal of Clinical Biochemistry and Nutrition, found that "hydroxycitric acid had no significant effect on the body component" and that "dietary efficacy was not indicated."[31]

42.    That study, which employed a "double-blind, non-cross-matching test,"[32] found that "Garcinia cambogia extract did not show dietary efficacy."[33]

43.    A 2011 study publish in the prominent Nutrition Journal found that Garcinia Cambogia extract supplementation "failed to promote weight-loss or any clinically significant change in % body fat."[34]

44.    The researchers noted that "the evidence for the effectiveness of natural food supplements to promote weight-loss and improve health is largely derived from animal

---

[27] *Id*. at 1092.

[28] *Id*. at 1091.

[29] *Id*. at 1093.

[30] Yoshikazu Yonei et. al, *Effects on the Human Body of a Dietary Supplement Containing L-Carnitine and Garcinia Cambogia Extract: A Study using Double-blind Tests*, 42 J. Clin. Biochem. Nutr. 89, 101 (2008).

[31] *Id*. at 100.

[32] *Id*. at 90.

[33] *Id*. at 101.

[34] Kim et al., *Does Glycine max leaves or Garcinia Cambogia promote weight-loss or lower plasma cholesterol in overweight individuals: a randomized control trial*, 10 Nutr. J. 94, 94 (2011).

7

studies. Therefore, it is essential randomized double-blind placebo-controlled trials (RCTs) are conducted to determine the effectiveness of natural food supplements to promote weight-loss."[35]

45.     The randomized double-blind placebo-controlled trial found that "GCE supplementation was not effective in promoting weight-loss in overweight individuals."[36]

46.     Further, "[i]n agreement with past studies the present study provided no evidence that [garcinia cambogia extract] GCE supplementation can modify calorie intake in overweight individuals consuming their habitual diet."[37]

47.     Like the previous studies, "neither EGML nor GCE supplementation alone can promote weight-loss in overweight individuals."[38]

48.     These studies, all of which were controlled human trials, affirmatively demonstrate that Garcinia Cambogia extract (HCA) does not and cannot aid weight management or appetite control.

## II.     Scientific Research Demonstrates that Chromium Is Not Effective in Supporting Weight Loss, Weight Management, or Appetite Control

49.     Like Garcinia Cambogia or HCA, scientific studies demonstrate that chromium is not effective in aiding weight loss, weight management or appetite control.

50.     One of the first rigorous studies of the effect of chromium supplementation on weight loss and fat metabolism found that "12 weeks of chromium supplementation in conjunction with strength training does not increase lean body mass and muscle strength or decrease percent body fat."[39]

---

[35] *Id.* at 94-95.

[36] *Id.* at 101.

[37] *Id.* at 102.

[38] *Id.*

[39] Hallmark, M. A., et al., *Effects of chromium supplementation and resistive training on muscle strength and lean body mass in untrained men*, 28 Med. & Sci. Sports & Exercise 139, 139 (1993).

51.    Similarly, in a 1996 study published in the prominent American journal of clinical nutrition found that "routine chromium supplementation has no beneficial effects on body- composition change."[40]

52.    Similarly, a 2001 study found that chromium supplementation "did not significantly affect body composition. . .  in moderately obese women placed on an exercise program."[41]

53.    While initial interest in chromium as a weight loss aid was generated "based on unpublished, flawed studies that have not been subjected to the peer review process," attempts to replicate these results using "better experimental design" have shown that chromium supplementation "does not increase lean muscle mass or decrease body fat."[42]

54.    In short, "the limited studies to date indicate that chromium supplements do not promote general muscle gain and fat loss, as determined by various methods of body-composition assessment."[43]

### III.    Defendant's Sale and Marketing of the Product

55.    Defendant has distributed, marketed, and sold the Product on a nationwide basis, including California, for at least the past several years.

56.    The Product comes in "caplets" form and are sold in various quantities, including bottles of 90 and 180 caplets.

---

[40] Lukaski, H., et al., *Chromium supplementation and resistance training: Effects on body composition, strength, and trace element status of men*, 63 Am. J. Clin. Nutr. 954 (1996).
[41] Vople et al., *Effect of chromium supplementation and exercise on body composition, resting metabolic rate and selected biochemical parameters in moderately obese women following an exercise program*, 20 J. Am. Coll. Nutr. 293 (2001).
[42] Melvin Williams, *Dietary Supplements and Sports Performance*, 2 Int. Soc. Sports Nutr. 43, 46 (2005).
[43] Lukaski, *Magnesium, zinc, and chromium nutriture and physical activity*, 72 Am. J. Clin. Nutr. 585, 590 (2000).

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.    Defendant's Misleading Labeling Claims**

    **A.    Defendant Markets the Product with False and Misleading Labeling Claims**

    57.    Defendant markets and advertises the Product as an effective weight-loss supplement through claims placed directly on the bottle Product despite that it provides no such benefits.

    58.    Below is a true and correct exemplar the Product labeling.



Figure 1.

    59.    **Misleading "Weight Management" claim**:  Defendant prominently labels the Product with the phrase "Weight Management." This claim conveys that the Product is capable of aiding consumers lose weight and will actually help consumers lose weight. However, this claim, taken individually and especially in context of the label as a whole, is

10

misleading because the Product's only "active" ingredients are incapable of providing any weight-loss benefits.

60.    **Misleading "Appetite Control" claim:** Defendant prominently labels the Product with the phrase "Appetite Control." This claim conveys that the Product is capable of aiding consumers lose weight and will actually help consumers lose weight, by suppressing appetite. However, this claim, taken individually and especially in context of the label as a whole, is misleading because the Product's only "active" ingredients are incapable of providing any weight-loss benefits.

61.    In short, the claims on the packaging of the Product convey the concrete overall message that the Product by means of its HCA and chromium content, can effectively help consumers lose weight. Defendant intended consumers to rely upon this message, which is false and misleading for the reasons stated herein.

## IV.    The Labeling of the Product Violates California and Federal Statutes and Regulations

### A.    Any Violation of Federal Food Labeling Statutes or Regulations is a Violation of California Law

62.    Pursuant to the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875 *et. seq.* (the "Sherman Law"), California has adopted the federal food and dietary supplement labeling requirements as its own. *See id.* § 110665 ("Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in Section 403(q) (21 U.S.C. Sec. 343(q)) of the federal act and the regulation adopted pursuant thereto."); *id.* § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant thereto.").

63.    For the purposes of labeling, "a dietary supplement shall be deemed to be a food." *See* 21 U.S.C. § 321(ff).

64.    The Federal Food Federal Food, Drug, and Cosmetic Act expressly authorizes state regulations, such as the Sherman Law, that are "identical to the requirement[s]" of the FDCA and federal regulations. *See* 21 U.S.C. § 343-1.

65.    Because the Sherman Law's requirements are identical to the requirements of the Federal Food, Drug, and Cosmetic Act and FDA regulations the Sherman law is explicitly authorized by the FDCA.

**B.    The Product's False and Misleading Labeling Claims Render it Misbranded Under California and Federal Law**

66.    Defendant's deceptive statements described herein violate Cal. Health & Safety Code §§ 110390 and 110660, and 21 U.S.C. § 343(a), which deem a food or dietary supplement misbranded if its labeling is "false or misleading in any particular."

67.    Further, Defendant's labeling of the Product is misleading, and thus misbranded, because "it fails to reveal facts that are material in light of other representations." 21 C.F.R § 1.21. For example, in light of the Product's weight-loss claims the labeling fails to reveal the fact that numerous randomized, controlled human trials demonstrate that Garcinia Cambogia and Chromium are not effective or capable of aiding weight loss.

**C.    The Product is Misbranded Because it Bears Unauthorized Structure Function Claims**

68.    The Product is further misbranded because its labeling and packaging bear structure function claims even though the Product does not meet the requirements to make such claims.

69.    Specifically, the statements "Weight Management" and "Appetite Control" are structure function claims.

70.    These claims violate 21 U.S.C. 343(r)(6) because the weight of scientific evidence does not support these claims as being "truthful and not misleading" as required. *See* 21 U.S.C. 343(r)(6). To the contrary, scientific evidence, as alleged herein, affirmatively

*Nathan v. Vitamin Shoppe Inc.*
CLASS ACTION COMPLAINT

demonstrates that the Product's purportedly "active" ingredients are incapable of providing any dietary benefits.

## IV.   Plaintiff's Purchase, Reliance, and Injury

71.   Ms. Nathan purchased a 180-caplet bottle of Defendant's Garcinia Cambogia Extract in reliance on the Product's misleading dietary claims.

72.   Plaintiff purchased the Product, Vitamin Shoppe Brand Garcinia Cambogia Extract, from Vitamin Shoppe in San Diego, California in February of 2017.

73.   When deciding to purchase the Product, Plaintiff read and relied on the claims "Weight Management" and "Appetite Control," which appear directly on the Product's label and packaging.

74.   Based on these representations, Plaintiff believed the Product was an effective dietary aid that would provide weight-loss benefits and would help her lose weight and help control her appetite.

75.   When purchasing the Product, Plaintiff was seeking a product that had the qualities described on the Product's label, namely, an effective "weight management" and "appetite control" supplement that aids in weight loss.

76.   The representations on the Product's label were and are false and misleading, and had the capacity, tendency, and likelihood to confuse or confound Plaintiff and other consumers acting reasonably (including the putative Class) because, as described in detail herein, the Product cannot deliver the purported benefits and is no more effective than a placebo.

77.   Plaintiff acted reasonably in relying on the challenged claims that Defendant intentionally placed on the Product's label and packaging with the intent to induce average consumers into purchasing it.

78.   Instead of receiving a product that had actual beneficial weight-loss properties, the Product that Plaintiff and the Class received was one that does not and cannot deliver the claimed benefits.

79.     The Product, which has the sole intended purpose is as a dietary aid, is worthless since it is incapable of providing any such benefits.

80.     The Product costs more than similar products without misleading labeling, and would have cost less absent the false and misleading statements.

81.     Plaintiff paid more for the Product, and would only have been willing to pay less, or unwilling to purchase it at all, absent the false and misleading labeling statements complained of herein.

82.     For these reasons, the Product was worth less than what Plaintiff paid for it.

83.     Plaintiff would not have purchased the Product if she knew it was misbranded pursuant to California and FDA regulations and could not be legally sold or held and thus is legally worthless.

84.     Plaintiff would not have purchased the Product if she knew that its labeling claims were false or misleading, or that the Product is incapable of providing the claimed benefits.

85.     Plaintiff lost money as a result of Defendant's deceptive claims and practices in that she did not receive what she paid for when purchasing the Product.

86.     Plaintiff detrimentally altered her position and suffered damages in an amount equal to the amount she paid for the Product.

87.     The senior officers and directors of Defendant allowed the Product to be sold with full knowledge or reckless disregard that the challenged claims are fraudulent, unlawful, and misleading.

## **CLASS ACTION ALLEGATIONS**

88.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks to represent a Class of all persons in California who purchased the Product, for personal or household use, and not for resale or distribution (the "Class").

89.    The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and Court.

90.    Questions of law and fact common to Plaintiff and the Class include:

a.    whether Defendant communicated a message regarding weight-management and appetite-control benefits of the Product through its packaging and advertising;

b.    whether that message was material, or likely to be material to a reasonable consumer;

c.    whether the challenged claims discussed herein are false, misleading, or reasonably likely to deceive a reasonable consumer;

d.    whether Defendant's conduct violates public policy;

e.    whether Defendant's conduct violates state and federal food statutes or regulations;

f.    whether the Product is misbranded;

g.    the proper amount of restitution, damages, and punitive damages;

h.    the proper injunctive relief, including a corrective advertising campaign; and

i.    the proper amount of attorneys' fees.

91.    These common questions of law and fact predominate over questions that affect only individual Class Members.

92.    Plaintiff's claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct. Specifically, all Class Members, including Plaintiff, were subjected to the same misleading and deceptive conduct when they purchased the Product, and suffered economic injury because the Product was and still is misrepresented. Absent Defendant's business practice of

*Nathan v. Vitamin Shoppe Inc.*
CLASS ACTION COMPLAINT

1   deceptively and unlawfully labeling the Product, Plaintiff and Class Members would not have
2   purchased the Product.

3         93.    Plaintiff will fairly and adequately represent and protect the interests of the
4   Class, has no interests incompatible with the interests of the Class, and has retained counsel
5   competent and experienced in class action litigation, and specifically in litigation involving
6   the false and misleading advertising.

7         94.    Class treatment is superior to other options for resolution of the controversy
8   because the relief sought for each Class Member is small relative to the cost of litigation such
9   that, absent representative litigation, it would be infeasible for Class Members to redress the
10  wrongs done to them.

11        95.    Questions of law and fact common to the Class predominate over any questions
12  affecting only individual Class Members.

13        96.    Defendant has acted on grounds applicable to the Class, thereby making
14  appropriate final injunctive and declaratory relief concerning the Class as a whole.

15        97.    As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P.
16  23(b)(2), and 23(b)(3).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violations of the Unfair Competition Law,

### Cal. Bus. & Prof. Code §§ 17200 *et seq*.

21        98.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint
22  as if set forth in full herein.

23        99.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."
24  Cal. Bus. & Prof. Code § 17200.

25        100.   The acts, omissions, misrepresentations, practices, and non-disclosures of
26  Defendant as alleged herein constitute business acts and practices.

### Fraudulent

101.    A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

102.    As set forth herein, Defendant's claims relating to the Product are likely to mislead reasonable consumers to believe the Product can provide weight-loss benefits, when it cannot.

**Unlawful**

103.    The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

- Cal. Bus. & Prof. Code § 12606.2 and 21 C.F.R. § 100.100;
- The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;
- The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*;
- The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*; and
- The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 *et seq.*

**Unfair**

104.    Defendant's conduct with respect to the labeling, advertising, and sale of the Product was "unfair" because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

105.    Defendant's conduct with respect to the labeling, advertising, and sale of the Product was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the Consumers Legal Remedies Act, the False Advertising Law, portions of the Federal Food, Drug, and Cosmetic Act, and portions of the California Sherman Food, Drug, and Cosmetic Law.

106.    Defendant's conduct with respect to the labeling, advertising, and sale of the Product was and is also unfair because the consumer injury was substantial, not outweighed

by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

107.    Defendant profited from its sale of the falsely, deceptively, and unlawfully advertised and packaged Product to unwary consumers.

108.    Plaintiff and Class Members are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate misleading information on the Product's packaging. Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

109.    Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the other Class Members. Plaintiff has suffered injury in fact as a result of Defendant's unlawful conduct.

110.    In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

111.    Plaintiff and the Class also seek an order for and restitution of all monies from the sale of the Product, which were unjustly acquired through acts of unlawful competition.

## SECOND CAUSE OF ACTION

## Violations of the False Advertising Law,

## Cal. Bus. & Prof. Code §§ 17500 *et seq*.

112.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

113.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

114.   It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

115.   As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendant relating to the Product misled consumers acting reasonably as to the effectiveness and weight-loss properties of the Product.

116.   Plaintiff suffered injury in fact as a result of Defendant's actions as set forth herein because she purchased the Product in reliance on Defendant's false and misleading labeling claims that the Product, among other things, aids in weight management and provides appetite control.

117.   Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Product in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

118.   Defendant profited from its sale of the falsely and deceptively advertised Product to unwary consumers.

119.   As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

120.   Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of herself and the Class, seeks an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

## THIRD CAUSE OF ACTION

### Violations of the Consumer Legal Remedies Act,
### Cal. Civ. Code §§ 1750 *et seq.*

121.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

122.   The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

123.   Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Product for personal, family, or household purposes by Plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA:

a.     § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

b.     § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c.     § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d.     § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

124.   Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Product to unwary consumers.

125.   Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

126.   As a result, Plaintiff and the Class have suffered harm, and therefore seek (a) actual damages in the amount of the total retail sales price of the Product sold to all Class Members, (b) punitive damages in an amount sufficient to deter and punish, (c) injunctive relief in the form of modified advertising and a corrective advertising plan, and (d) restitution.

127.   Pursuant to California Civil Code § 1782, Plaintiff notified Defendant in writing by certified mail, return receipt requested, of her claims, and of the particular violations of § 1770 of the CLRA, but Defendant failed to remedy the violations within 30 days.

128.   In compliance with Cal. Civ. Code § 1780(d), Plaintiff's affidavit of venue is filed concurrently herewith.

## FOURTH CAUSE OF ACTION

### Breach of Express Warranties,

### Cal. Com. Code § 2313(1)

129.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

130.   Through the Product's label and advertising, Defendant made affirmations of fact or promises, or description of goods, described above in paragraph 73, which were "part of the basis of the bargain," in that Plaintiff and the Class purchased the Product in reasonable reliance on those statements. Cal. Com. Code § 2313(1).

131.   Defendant breached the express warranties by selling a Product that does not and cannot provide the promised benefits.

132.   That breach actually and proximately caused injury in the form of the lost purchase price that Plaintiff and Class members paid for the Product.

## FIFTH CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability,

### Cal. Com. Code § 2314

133.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

134.   Defendant, through its acts and omissions set forth herein, in the sale, marketing, and promotion of the Product, made representations to Plaintiff and the Class that, among other things, the Product would aid in weight management and appetite control.

135.   Plaintiff and the Class bought the Product manufactured, advertised, and sold by Defendant, as described herein.

136.    Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was, in the sale to Plaintiff and other consumers, an implied warranty that those goods were merchantable.

137.    However, Defendant breached that implied warranty in that the Product does not aid in weight management and appetite control.

138.    As an actual and proximate result of Defendant's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that it did not conform to promises and affirmations made on the container or label of the goods nor is it fit for its ordinary purpose, aiding in weight management and appetite control.

139.    Plaintiff and Class have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the Product's purchase prices.

## PRAYER FOR RELIEF

140.    Wherefore, Plaintiff, on behalf of herself, all others similarly situated and the general public, prays for judgment against Defendant as to each and every cause of action, and the following remedies:

A.    An Order declaring this action to be a proper class action, appointing Plaintiff as class representative, and appointing undersigned counsel as class counsel;

B.    An Order requiring Defendant to bear the cost of class notice;

C.    An Order compelling Defendant to conduct a corrective advertising campaign;

D.    An Order compelling Defendant to destroy all misleading and deceptive advertising materials and product labels, and to recall all offending Products;

E.    An Order requiring Defendant to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

F.    An Order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, plus pre-and post-judgment interest thereon;

G.    An Order requiring Defendant to pay actual and punitive damages where permitted under law;

H.    An award of attorneys' fees and costs; and

I.    Any other and further relief that Court deems necessary, just, or proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: May 4, 2017

/s/ Paul K. Joseph
**THE LAW OFFICE OF PAUL K. JOSEPH, PC**
PAUL K. JOSEPH
*paul@pauljosephlaw.com*
4125 W. Point Loma Blvd., No. 206
San Diego, CA 92110
Phone: (619) 767-0356
Fax: (619) 331-2943
***Counsel for Plaintiff and the Proposed Class***

*Nathan v. Vitamin Shoppe Inc.*
CLASS ACTION COMPLAINT